KEATS GATIEN LLP
Anthony M. Keats (SBN 123672)
tony@keatsgatien.com
Matthew Graham (SBN 308115)
matt@keatsgatien.com
120 S. El Camino Drive, Suite 207
Beverly Hills, CA 90212
Telephone: 424-302-0692

BARACK FERRAZZANO KIRSCHBAUM & NAGELBERG LLP
Robert E. Shapiro
Thomas M. Williams
Maile H. Solís
Murphy Olivia Glass
*Pro Hac Vice Applications Forthcoming*
200 West Madison Street, Suite 3900
Chicago, IL 60606
Telephone: 312-984-3100

*Attorneys for Defendant*
*Louis Vuitton North America, Inc.*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

POCKET SOCKS, INC., a California Corporation

Plaintiff,

v.

LOUIS VUITTON NORTH AMERICA, INC., a Delaware Corporation

Defendant.

Case No.: 24-cv-01076-JLS-AHG

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

*[filed concurrently with Notice of Motion and Motion to Dismiss]*

Hearing Date: December 12, 2024
Hearing time: 1:30 PM
Courtroom: 4D
Judge: Hon. Janis L. Sammartino

**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT**

Action Filed: June 20, 202

## TABLE OF CONTENTS


**Page**

INTRODUCTION .......... 1
BACKGROUND .......... 1
A. Plaintiff's Sock .......... 1
B. Plaintiff's Registrations .......... 2
C. The Louis Vuitton Sock .......... 3
D. The Lawsuit .......... 3
LEGAL STANDARD .......... 3
ARGUMENT .......... 4
A. Each of Plaintiff's Claims Fails Because Plaintiff Did Not Adequately Plead Likelihood of Confusion. .......... 4
B. Plaintiff's Complaint Does Not Adequately Plead Trade Dress Infringement .......... 7
1. Plaintiff Fails to Articulate its Claimed Trade Dress. .......... 7
2. Even if Properly Articulated, Plaintiff Did Not Plead Any Element of Trade Dress Infringement. .......... 8
CONCLUSION .......... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acad. of Motion Picture Arts & Sciences v. Creative House Promotions, Inc.*,
944 F.2d 1466 (9th Cir. 1991) ....................4

*America, Inc. v. Skechers USA, Inc.*,
890 F.3d 747 (9th Cir. 2018) ....................5

*Arcona, Inc. v. Farmacy Beauty, LLC*,
976 F.3d 1074 (9th Cir. 2020) ....................5, 6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................3

*Brighton Collectibles, Inc. v. Dynasty Designs, LLC*,
No. 06-CV-1588, 2008 WL 11339960 (S.D. Cal. Sept. 10, 2008) ....................6

*Cleary v. News Corp.*,
30 F.3d 1255 (9th Cir. 1994) ....................4

*Clicks Billiards, Inc. v. Sixshooters, Inc.*,
251 F.3d 1252 (9th Cir. 2001) ....................4, 9, 10

*Crafty Productions, Inc. v. Fuqing Sanxing Crafts CO. Ltd.*,
839 F. App'x 95 (9th Cir. 2020) ....................9

*Daimler AG v. A-Z Wheels LLC*,
334 F. Supp. 3d 1087 (S.D. Cal. 2018) ....................4

*Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*,
158 F.3d 1002 (9th Cir. 1998) ....................10

*Entrepreneur Medica, Inc. v. Smith*,
279 F.3d 1135 (9th Cir. 2002) ....................4

*First Brands Corp. v. Fred Meyer, Inc.*,
809 F.2d 1378 (9th Cir. 1987) ....................9

*Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*,
456 U.S. 844 (1982) ....................9

*Lepton Labs, LLC v. Walker*,
55 F. Supp. 3d. 1230 (C.D. Cal. 2014) .......... 7

*Lolicel (Pty) Ltd. v. Stanmar Int'l [USA] Inc.*,
No. 22-cv-926-LL-BGS, 2023 WL 3134599 (S.D. Cal. Apr. 27, 2023) .......... 4

*Moldex-Metric, Inc. v. McKeon Prod., Inc.*,
891 F.3d 878 (9th Cir. 2018) .......... 7

*Murray v. Cable Nat'l Broad. Co.*,
86 F.3d 858 (9th Cir. 1996) .......... 5

*Nasser v. Julius Samann, Ltd.*,
No. 17-cv-863-BTM-MDD, 2020 WL 10457001 (S.D. Cal. Aug. 28, 2020) .......... 5

*Performance Designed Prods. LLC v. Plantronics, Inc.*,
No. 3:19-cv-00536-GPC-LL, 2019 WL 3082160 (S.D. Cal. July 15, 2019) .......... 5

*Profade Apparel, LLC v. Rd. Runner Sports, Inc.*,
No. 18CV1254-JAH (MDD), 2020 WL 5230490 (S.D. Cal. Sept. 2, 2020) .......... 9

*Sleep Sci. Partners v. Lieberman*,
No. 09–04200 CW, 2010 WL 1881770 (N.D. Cal. 2010) .......... 7

*Talking Rain Beverage Co. Inc. v. South Beach Beverage Co.*,
349 F.3d 601 (9th Cir. 2003) .......... 10

*Universal Prot. Serv., LP v. Coastal Fire & Integration Sys., Inc.*,
No. 22-cv-1352-JES-KSC, 2023 WL 4042582 (S.D. Cal. June 15, 2023) .......... 5

*Wal-Mart Stores, Inc. v. Samara Bros., Inc.*,
529 U.S. 205 (2000) .......... 10

*Whitaker v. Tesla Motors, Inc.*,
985 F.3d 1173 (9th Cir. 2021) .......... 3

**Statutes**

15 U.S.C. § 1125(a)(3) .......... 9

15 U.S.C. § 1114(a)(1) .......... 3, 4, 11

Cal. Bus. & Prof. Code § 17200 ....................................................................4

## INTRODUCTION

Plaintiff Pocket Socks, Inc. ("Plaintiff") is one of many retailers selling inexpensive socks with a zippered internal pocket to serve as a "fun & functional" "unique travel security solution" for its everyday customers. In this case, it contends that Louis Vuitton North America ("Louis Vuitton"), a high-fashion seller of designer goods, has infringed Plaintiff's "pocket socks" trademark and alleged trade dress rights by selling a luxury sock with a pearl-secured external pocket for $565.

Even laying aside the question of whether "pocket socks" is a non-generic phrase capable of trademark protection, all three of the claims in Plaintiff's Complaint are legally defective for the same reason: the Complaint does not state any facts to support its bare legal conclusion that there is a likelihood of confusion between Plaintiff's goods and those of Louis Vuitton. The case law in this Circuit uniformly requires dismissal of claims of trademark, trade dress, and state law unfair competition where facts concerning the likelihood of confusion are absent from the Complaint, as they are here.

In addition, Plaintiff's claim for trade dress liability suffers from numerous other pleading deficiencies. Plaintiff's Complaint does not articulate its claimed trade dress with the required specificity. By law, Plaintiff's attachment of the Supplemental Register Registration Certificate cannot cure this deficiency. Moreover, the designs at issue are readily distinguishable on their face. Finally, the Complaint fails to meet Plaintiff's obligation to plead facts, rather than bare conclusions, showing the non-functionality and distinctiveness of its claimed trade dress. Indeed, such facts as there are in the Complaint show that the Plaintiff's claimed trade dress *is* functional.

For all these reasons, Plaintiff's Complaint must be dismissed.

## BACKGROUND

### A. Plaintiff's Sock

After being pickpocketed while traveling, Plaintiff's founder Evan Papel ("Papel") created "[a] unique travel security solution": a "sock with a pocket." *About Us*,

PocketSocks.com, https://www.pocketsocks.com/pages/about-us (last accessed October 8, 2024); Compl., ECF No. 1, ¶ 8. As advertised, Plaintiff's purpose is to "produce and distribute a fun & functional sock line unlike any other in the world." *About Us, supra.* The "colorful fun and fashionable personal expression line was born to compliment [sic] the already successful travel security & everyday convenience." *Id.* Plaintiff's products sell for less than $50 through retailers like QVC and Amazon. Compl., ECF No. 1, Ex. H.

**B. Plaintiff's Registrations**

Since launching Plaintiff's product, Papel and Plaintiff have filed several inconsistent trademark applications. In 2012, Papel, as a sole proprietor of a company called ZIPITGEAR.COM, received a registration on the Supplemental Register for the mark "Pocket Socks." POCKET SOCKS, Registration No. 4,200,363; Compl., ECF No. 1, Ex. A. The registration claims a first use on January 1, 1975, and a first use in commerce on June 15, 2002. POCKET SOCKS, Registration No. 4,200,363. In 2013, Papel, as an individual, received a registration on the Principal Register for the mark "Pocket Socks," which notes a first use and use in commerce on June 1, 2002. POCKET SOCKS, Registration No. 4,414,045; Compl., ECF No. 1, Ex. B.

Notably, though the 2012 registration appears only on the Supplemental Register, Papel's 2013 Principal Register application claimed that the mark had acquired distinctiveness "as evidenced by the ownership on the *Principal Register* for the same mark for related goods or services of US Registration No(s) 4200363." U.S. Trademark Application Serial No. 85846917 (filed Feb. 11, 2013) (emphasis added).

Most recently, on June 25, 2024, Plaintiff received the new registration on the Principal Register it sought for the mark "Pocket Socks." POCKET SOCKS, Registration No. 7,429,144; Compl., ECF No. 1, ¶ 10. The Registration Certificate states a first use and first date in commerce on August 14, 2007. POCKET SOCKS, Registration No. 7,429,144.

Additionally, in 2020, Plaintiff received its first Supplemental Register registration for the Pocket Socks trade dress. Registration No. 6,066,095; Compl., ECF No. 1, Ex. C. The Supplemental Register describes the mark as a

> three-dimensional configuration comprising a sock where the toe and heel of the sock are shaded and eleven shaded circles appear on the sock. At the top of the sock is a pocket with the interior in a small polka dot pattern. The broken line is to represent the shape of the overall sock and zippered pocket, is not part of the mark, and serves only to show the position or placement of the mark on the goods.

Compl., ECF No. 1, Ex. C.

**C. The Louis Vuitton Sock**

The accused Louis Vuitton sock debuted on the runway at Paris Fashion Week in 2023. Compl., ECF No. 1, ¶ 13. As Plaintiff admits, Louis Vuitton's socks are "luxury-priced," selling for $565 per pair, more than ten times the price of Plaintiff's product. Compl., ECF No. 1, ¶ 12 & Ex. G. Louis Vuitton's socks are advertised as an outfit accessory featuring "the season's Signature Pearl accent" and the "heritage Damier pattern . . . subtly knitted . . . in a neutral white colourway to complement virtually any ensemble." Compl., ECF No. 1, ¶ 15.

**D. The Lawsuit**

Despite the obvious differences in the products' design, market, and price, Plaintiff filed the present lawsuit on June 20, 2024, alleging trademark and trade dress infringement under the Lanham Act and unfair competition under California law. All claims fail as a matter of law and should be dismissed with prejudice, as they are insufficiently pled, and no set of facts can be alleged to sustain them.

## LEGAL STANDARD

Plaintiff's Complaint cannot survive a motion to dismiss unless it states a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[C]ourts need not accept as true legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176 (9th Cir. 2021) (internal quotation omitted). "[O]nly a complaint that states a plausible claim

for relief with well-pleaded facts demonstrating the pleader's entitlement to relief can survive a motion to dismiss." *Id.*

## ARGUMENT

### A. Each of Plaintiff's Claims Fails Because Plaintiff Did Not Adequately Plead Likelihood of Confusion.

Each of Plaintiff's asserted causes of action requires it to plead, and ultimately prove, that consumer confusion is likely. As to Count I, it is axiomatic that "[t]o state a valid cause of action for trademark infringement under the Lanham Act, a plaintiff 'must prove: (1) that it has a protectable ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion.'" *Daimler AG v. A-Z Wheels LLC*, 334 F. Supp. 3d 1087, 1095 (S.D. Cal. 2018) (quoting *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1202 (9th Cir. 2012)).

Plaintiff's unfair competition claim under Cal. Bus. & Prof. Code § 17200 (Count III) likewise requires plausible allegations of likelihood of confusion. *See Lolicel (Pty) Ltd. v. Stanmar Int'l [USA] Inc.*, No. 22-cv-926-LL-BGS, 2023 WL 3134599, at *6 (S.D. Cal. Apr. 27, 2023); *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994)(Under both the Lanham Act and California statute, the test is "whether the public is likely to be deceived or confused by the similarity of the marks" (quoting *Acad. of Motion Picture Arts & Sciences v. Creative House Promotions, Inc.*, 944 F.2d 1466, 1457 (9th Cir. 1991))).

Finally, Plaintiff's trade dress infringement claim (Count II) requires Plaintiff to plead and prove a likelihood of confusion. *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1258 (9th Cir. 2001) (identifying likelihood of confusion as an element of a trade dress infringement claim).

The likelihood of confusion test asks "whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." *Entrepreneur Medica, Inc. v. Smith*, 279 F.3d 1135, 1140 (9th Cir. 2002). Consumer confusion must "be probable, not simply a possibility." *Murray v. Cable Nat'l*

*Broad. Co.*, 86 F.3d 858, 861 (9th Cir. 1996) (quoting *Rodeo Collection, Ltd. v. W. Seventh*, 812 F.2d 1215, 1217 (9th Cir. 1987)). Further, courts examine the entire product when assessing likelihood of confusion and do "not myopically focus on only the alleged [infringing] marks to the exclusion of the entire product or even common sense." *Arcona, Inc. v. Farmacy Beauty, LLC*, 976 F.3d 1074, 1080 (9th Cir. 2020).

In assessing likelihood of confusion, Ninth Circuit courts apply the *Sleekcraft* factors, which include strength of the mark, proximity of the goods, similarity of the marks, evidence of actual confusion, marketing channels used, degree of care likely to be exercised by the consumer, defendant's intent in selecting the mark, and likelihood of expansion of the product lines. *Universal Prot. Serv., LP v. Coastal Fire & Integration Sys., Inc.*, No. 22-cv-1352-JES-KSC, 2023 WL 4042582, at *4 (S.D. Cal. June 15, 2023) (trademark infringement); *adidas America, Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 755 (9th Cir. 2018) (trade dress infringement).

In the Complaint, Plaintiff alleges only the bare conclusion that Louis Vuitton's use of the term "Pocket Socks" "is likely to cause confusion." Compl., ECF No. 1, ¶ 22. There are no further factual allegations regarding even who is likely to be confused let alone why. Plaintiff never mentions the majority of the *Sleekcraft* factors, let alone alleges any facts to support them.

California courts have repeatedly stated that these sparse statements are insufficient to support a claim. *See, e.g.*, *Performance Designed Prods. LLC v. Plantronics, Inc.*, No. 3:19-cv-00536-GPC-LL, 2019 WL 3082160 (S.D. Cal. July 15, 2019) (dismissing a trademark infringement claim because a plaintiff "merely recited an element of trademark infringement" without additional "facts to plausibly state an allegation that the public is likely to be confused by Defendants' use of the mark."); *Nasser v. Julius Samann, Ltd.*, No. 17-cv-863-BTM-MDD, 2020 WL 10457001, at *2 (S.D. Cal. Aug. 28, 2020) (dismissing a claim where plaintiff recited the *Sleekcraft* factors but then relied on "bald legal conclusions" rather than facts to support its claims).

In this case, not only is there no clear mention of the *Sleekcraft* factors, but where Plaintiff does allege facts that *could* be relevant to likelihood of confusion, those alleged facts make consumer confusion *less* likely. These include Plaintiff's acknowledgement of the price difference, use of distinct marketing channels, and prominent display of the Louis Vuitton house mark. *See, e.g., Brighton Collectibles, Inc. v. Dynasty Designs, LLC*, No. 06-CV-1588 H, 2008 WL 11339960, at *6–7 (S.D. Cal. Sept. 10, 2008) (determining that different retail prices and sale through non-competitive retailers weigh against likelihood of confusion); *Arcona*, 976 F.3d at 1081 (noting use of a house mark makes consumer confusion less likely). As seen in Plaintiff's own exhibits, Plaintiff's sock sells for less than $50 through retailers including Amazon and QVC, whereas Louis Vuitton's socks are sold through its own boutiques and retailers for ten times as much at $565.00. *Compare* Compl., ECF No. 1, ¶¶ 12–15, 17, *with id.* at Ex. H. Plaintiff's sock was featured on Good Morning America's "Deals & Steals" segment, whereas Louis Vuitton's socks appeared on a Paris Fashion Week runway. *Compare* Compl., ECF No. 1, ¶ 9, *with id.*, ¶ 13; *see also About Us, supra*. Moreover, as shown in the Complaint, Louis Vuitton's socks are prominently marked with the famous LOUIS VUITTON house mark, rendering confusion "implausible." Compl., ECF No. 1, ¶¶ 14–15; *Arcona*, 976 F.3d at 1081 (noting that use of house marks can reduce risk of consumer confusion and concluding it was "implausible that a consumer would be deceived because the products had their respective housemarks . . . prominently on the packaging").

Plaintiff's sole allegation regarding similarity between the marks—that Louis Vuitton's "use of 'Pocket Socks' appears in the same font and size as Pocket Sock's U.S. Trademark Registration No, 4,414,045"—is unavailing. Compl., ECF No. 1, ¶ 16. The Registration Certificate itself precludes any reliance on this assertion. The Certificate explains "the mark consists of standard characters without claim to any particular font, style, size, or color." *Id.* at Ex. B. Further, Plaintiff alleges nothing to show consumers associate a particular font or size with Plaintiff or its product.

Plaintiff does not plausibly allege likelihood of confusion, nor can it given the facts it did allege. All counts should be dismissed with prejudice.

**B. Plaintiff's Complaint Does Not Adequately Plead Trade Dress Infringement.**

**1. Plaintiff Fails to Articulate its Claimed Trade Dress.**

Trade dress is the "total image of a product," including features such as size, shape, color, texture, and graphics. *Moldex-Metric, Inc. v. McKeon Prod., Inc.*, 891 F.3d 878, 881 (9th Cir. 2018) (first quoting *Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*, 158 F.3d 1002, 1005 n.3 (9th Cir. 1998); and then citing *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 210 (2000)). To successfully allege trade dress infringement, a "[p]laintiff should clearly articulate its claimed trade dress to give a defendant sufficient notice." *Sleep Sci. Partners v. Lieberman*, No. 09–04200 CW, 2010 WL 1881770, at *3 (N.D. Cal. 2010). A claim may be allowed to proceed only "[s]o long as a plaintiff has alleged a complete recitation of the concrete elements of its alleged trade dress." *Lepton Labs, LLC v. Walker*, 55 F. Supp. 3d. 1230, 1240 (C.D. Cal. 2014).

Here, the body of the Complaint contains no description of the allegedly protected trade dress. Louis Vuitton must guess at the claimed trade dress and has not been provided with sufficient notice as to the claims against which it is meant to defend. *See Sleep Sci. Partners*, 2010 WL 1881770, at *4 (dismissing a trade dress infringement claim because the complaint did not articulate the elements of the protected trade dress).

Nor can Exhibit C, the Supplemental Register Registration Certificate, rescue Plaintiff's claim. There, the description of the protected design is objectively dissimilar to Louis Vuitton's design.

The Supplemental Register describes Plaintiff's mark as follows:

> The mark consists of three-dimensional configuration comprising a sock where the toe and heel of the sock are shaded and eleven shaded circles appear on the sock. At the top of the sock is a pocket with the interior in a small polka dot pattern.

Compl., ECF No. 1., Ex. C.

Pictures of Louis Vuitton's sock included in the Complaint show none of these elements. The heels and toes are a solid color with no shading; there are no circles on the sock. The Louis Vuitton sock has no interior pocket pattern and has a button enclosure, not a zipper. *See* Compl., ECF No. 1, ¶ 14. Plaintiff's own allegations describe Louis Vuitton's sock as follows: "The heritage Damier pattern is subtly knitted into the design of these wardrobe essentials offered in a neutral white colourway." *Id.*, ¶ 15.

A side-by-side comparison is below:

| Plaintiff's Sock<br>(Compl., ECF No. 1, Ex. C | Louis Vuitton's Sock<br>Compl., ECF No. 1, ¶ 14 |
|---|---|
|  |  |

Plaintiff has failed to articulate concrete elements comprising its trade dress, while the Supplemental Register's mark description proves the two products are dissimilar on their face. Count II should be dismissed with prejudice.

**2. Even if Properly Articulated, Plaintiff Did Not Plead Any Element of Trade Dress Infringement.**

To state a claim of trade dress infringement related to product design or product configuration, Plaintiff must allege that (1) the trade dress features are non-functional; (2) the trade dress has acquired distinctiveness through secondary meaning; and

(3) customers are likely to confuse plaintiff's product with defendant's product. *Clicks Billiards,* 251 F.3d at 1258.

Regarding the first element, Plaintiff bears the burden of pleading, as well as proving, non-functionality for unregistered product design or product configuration. 15 U.S.C. 1125(a)(3); *see also Crafty Productions, Inc. v. Fuqing Sanxing Crafts CO. Ltd.*, 839 F. App'x 95, 98 (9th Cir. 2020)(affirming dismissal of a trade dress infringement claim where the party failed to adequately plead non-functionality and noting that "[t]he court must view the facts in the light most favorable to the plaintiff but it cannot do so where the plaintiff has pled no facts."). "[A] product feature is functional if it is essential to the [product's] use . . . or if it affects the cost or quality of the article." *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1381 (9th Cir. 1987) (quoting *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 850 n. 10 (1982)).

Despite the requirement to plead as well as prove this element, the Complaint contains no allegations of non-functionality. Plaintiff appears to attempt to rely on its Supplemental Registration as evidence of this element, but this does not save Plaintiff. To begin with, only a registration on the *Principal* Register relieves Plaintiff from its burden. 15 U.S.C. § 1125(a)(3) ("In a civil action for trade dress infringement under this chapter for trade dress not registered on the *principal register*, the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional." (emphasis added)); *see also Profade Apparel, LLC v. Rd. Runner Sports, Inc.*, No. 18CV1254-JAH (MDD), 2020 WL 5230490, at *5 (S.D. Cal. Sept. 2, 2020) (granting a motion to dismiss because the complaint did not contain facts sufficient to support a plausible claim of non-functionality).

Moreover, to the extent the claimed trade dress is something other than the Supplemental Register's description—for example, if Plaintiff intended to allege that its zippered pocket on its sock is protected trade dress—it is difficult to see how non-functionality could ever be pled successfully. Both the product's origin story and Plaintiff's

description of the sock as "fun & functional" admit the zippered pocket's utilitarian functionality. Compl., ECF No. 1, ¶ 8; *About Us, supra*.

And Plaintiff further emphasizes the trade dress's functionality through its advertising, which prominently displays the pocket storing valuables such as cash, credit cards, and keys. Compl., ECF No. 1, Ex. H; *see also About Us, supra*. Courts have routinely determined that advertising promoting the utilitarian advantages of the feature—either explicitly or implicitly—provides strong evidence of functionality. *Talking Rain Beverage Co. Inc. v. South Beach Beverage Co.*, 349 F.3d 601, 603–04 (9th Cir. 2003) (determining a trademark was functional in part because the "advertising tout[ed] the utilitarian advantages of the design"); *Disc Golf Ass'n v. Champion Discs, Inc.*, 158 F.3d 1002, 1009 (9th Cir. 1998) (noting that advantages of a specific design feature need only be implied from the advertisement to provide evidence of functionality).

Regarding the distinctiveness, the second element of a trade dress claim, Plaintiff's trade dress allegations assert product design or configuration infringement. Compl., ECF No. 1, ¶¶ 24–26. But unlike product packaging trade dress, product design and configuration trade dress can never be inherently distinctive. *Wal-Mart*, 529 U.S. at 216. So, to satisfy the distinctiveness element of a Lanham Act trade dress product design or configuration infringement claim, Plaintiff must show that the trade dress has acquired distinctiveness through secondary meaning. *Id.* To do so, "the elements making up the alleged trade dress must have been used in such a manner as to denote product source." *Clicks Billiards*, 251 F.3d at 1262 (quoting 1 McCarthy § 8:1). But "a product feature whose only impact is decorative and aesthetic, with no source-identifying role, cannot be given exclusive rights under trade dress law." *Id.*

Plaintiff has not pled any facts to support acquired distinctiveness. Instead, Plaintiff alleges the bare conclusion that the trade dress is "distinctive." Compl., ECF No. 1, ¶ 10. If anything, this unsupported allegation appears to be a claim that its trade dress is *inherently distinctive*, which, as noted, would be insufficient as a matter of law in the context of product design trade dress. *Wal-Mart*, 529 U.S. at 216. In fact, nothing in the

Complaint supports an allegation of acquired distinctiveness whereby consumers associate any product design—whether the design as described on the Supplemental Register or something else—with Plaintiff or the alleged trade dress has had an impact other than a decorative or aesthetic one.

Plaintiff's trade dress infringement claim (Count II) should be dismissed with prejudice.

## CONCLUSION

For the reasons stated above, Louis Vuitton North America respectfully requests that the Court dismiss Plaintiff's Complaint with prejudice in its entirety.

DATED: October 8, 2024

KEATS GATIEN LLP

By: /s/Matthew E. Graham
Matthew E. Graham
matt@keatsgatien.com
Anthony M Keats
and

BARACK FERRAZZANO KIRSCHBAUM & NAGELBERG LLP

Robert E. Shapiro
Thomas M. Williams
Maile H. Solís
Murphy Olivia Glass
*Pro Hac Vice Applications Forthcoming*

**Attorneys for Defendant**
**Louis Vuitton North America**