UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| POCKET SOCKS, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>LOUIS VUITTON NORTH AMERICA, INC., a Delaware corporation,<br><br>Defendant. | Case No.: 24-CV-1076 JLS (AHG)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>(ECF No. 6) |

Presently before the Court are Defendant Louis Vuitton North America, Inc.'s ("LVNA" or "Defendant") Motion to Dismiss Plaintiff's Complaint ("Mot.," ECF No. 6) and Memorandum of Points and Authorities in Support Thereof ("Mem.," ECF No. 6-1), along with Plaintiff Pocket Socks, Inc.'s ("Pocket Socks" or "Plaintiff") Response to Motion to Dismiss ("Opp'n," ECF No. 15) and LVNA's Reply ("Reply," ECF No. 14). On November 14, 2024, the Court took the matter under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). ECF No. 13. Having carefully reviewed Plaintiff's Complaint ("Compl.," ECF No. 1), the Parties' arguments, and the law, the Court **GRANTS** Defendant's Motion to Dismiss.

/ / /

/ / /

# BACKGROUND

## I. Factual Background

Evan Papel was traveling through Europe when he was victimized by a thief. Compl. ¶ 8. Papel's money was stolen on that trip. *Id.* But while he may have lost a few bucks, Papel also gained an idea: a travel security solution in the form of a sock with a zippered pocket providing a home for sensitive items that are sheltered from pickpockets. *Id.* Papel originally named his idea "ZIP IT GEAR," but he later rebranded in 2012 to the name "Pocket Socks." *Id.*

Papel quickly pursued intellectual property protection for his new conception from the United States Patent and Trademark Office ("PTO"), obtaining multiple trademark registrations and a design patent registration. *Id.* ¶ 10. Specifically, he was granted Registration No. 4,200,363 on the Supplemental Register on August 28, 2012, for the trademark "Pocket Socks," *id.*; Compl., Ex. A, ECF No. 1-2, a mark that was converted to the Principal Register on October 8, 2013, issuing as Registration No. 4,414,045, Compl. ¶ 10; Compl., Ex. B, ECF No. 1-3. Then, Papel's corporation Pocket Socks—the Plaintiff in this matter—was granted Registration No. 6,066,095 on the Supplemental Register on May 26, 2020, for a trade dress described as follows:

> The mark consists of three-dimensional configuration comprising a sock where the toe and heel of the sock are shaded and eleven shaded circles appear on the sock. At the top of the sock is a pocket with the interior in a small polka dot pattern. The broken line is to represent the shape of the overall sock and zippered pocket, is not part of the mark, and serves only to show the position or placement of the mark on the goods.

Compl. ¶ 10; Compl., Ex. C, ECF No. 1-4. An image of the associated trade dress is pictured below:



Compl., Ex. C, ECF No. 1-4.  Finally, on October 4, 2022, Papel was issued US Design Patent No. D965,284 for a "Sock with Zippered Pocket."  Compl. ¶ 10; Compl., Ex. D, ECF No. 1-5.

Plaintiff maintains that these intellectual property registrations reflect the "many years of diligence, effort and expense [that] has been aimed at creating Pocket Socks' distinctive products and brand," but that has not stopped Defendant from releasing a comparable product of its own.  Compl. ¶ 11.  As early as June 2023, Defendant "began using, marketing, offering for sale, and selling Louis Vuitton 'Pocket Socks' at Paris Fashion Week," *id.* ¶ 13, and Defendant's socks remain available for sale in its stores and on its website to this day, *id.* ¶¶ 15, 17.  Plaintiff describes LVNA's socks as "using the same 'Pocket Socks' name and brand, for a similar (although luxury-priced) product," *id.* ¶ 12, though LVNA's socks are advertised as being engraved with Louis Vuitton's housemark (the LV initials) and showcasing LVNA's heritage Damier pattern in the knitting, *id.* ¶ 15.  At least certain of Defendant's advertisements, such as a screenshot that Plaintiff incorporates into the Complaint, refer to Defendant's product as "Pocket Socks."  *Id.*  Said screenshot is pictured below:



*Id.* Plaintiff alleges that Defendant's use of Plaintiff's marks and the recent publicity surrounding Defendant's products "irreparably injures Pocket Socks' longstanding brand and trademark rights." *Id.* ¶ 19.

## II. Procedural History

Plaintiff filed its Complaint on June 20, 2024, asserting three causes of action: (1) trademark infringement under 15 U.S.C. §§ 1114(1)(a), 1125(a); (2) trade dress infringement under 15 U.S.C. §§ 1114(1)(a), 1125(a); and (3) unfair competition under Cal. Bus. & Prof. Code § 17200 ("UCL").  Compl. ¶¶ 21–30.  Defendant then moved to dismiss the Complaint on October 8, 2024, but just over one month later, the Parties jointly requested a two-month continuance to the briefing schedule to allow them to engage in ongoing settlement discussions.  ECF No. 12 at 1–2.  The Court acquiesced, setting Plaintiff's response deadline to January 13, 2025, and setting Defendant's reply deadline to January 20, 2025.  ECF No. 13 at 1–2.

/ / /

1   Plaintiff's deadline to oppose the instant Motion came and went without a response
2   being filed, prompting Defendant to file a Reply simply noting Plaintiff's failure to
3   respond. Reply at 1. The Opposition then arrived the next day, with Plaintiff representing
4   that it had been anticipating further settlement discussions with Defendant and admitted to
5   a calendaring error that caused the late filing. Opp'n at 1–2. Plaintiff apologized for its
6   mistake and then proceeded to respond, albeit in a brusque manner with mostly
7   undeveloped arguments. *Id.* at 1–4. The oversight, thus, left the Court with a void from
8   which to work.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 557).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S.

at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, the Court need not accept as true "legal conclusions" contained in the complaint. *Id.* This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*

## DISCUSSION

### I.   Likelihood of Confusion

Defendant's lead argument is broadly applicable to each of Plaintiff's claims, so the Court begins there. All three claims, says Defendant, require plausible allegations of a likelihood of confusion by consumers in the marketplace. Mem. at 4. But Defendant argues that the factual allegations in Plaintiff's Complaint are too sparse to pass muster under the *Sleekcraft* factors, which courts in the Ninth Circuit employ to analyze likelihood of confusion. *Id.* at 5. After stripping the Complaint of conclusory allegations, Defendant asserts that too little remains to support finding a likelihood of confusion. *Id.* And, per Defendant, the few facts that are alleged in the Complaint that might be relevant to the *Sleekcraft* factors can only be read to support the inference that there is, in actuality, no likelihood of confusion. *Id.* at 6. Plaintiff does not forcefully oppose Defendant's position but argues that sufficient facts are indeed alleged in the Complaint. Opp'n at 2–3.

Plaintiff's lackluster Opposition does not overcome Defendant's argument. Plaintiff's three claims—trademark infringement, trade dress infringement, and unfair competition—each require plausible allegations of a likelihood of confusion. *See Daimler AG v. A-Z Wheels LLC*, 334 F. Supp. 3d 1087, 1095 (S.D. Cal. 2018) (trademark infringement); *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 841 (9th Cir. 1987) (trade dress infringement); *Performance Designed Prods. LLC v. Plantronics, Inc.*,

No. 3:19-cv-00536-GPC-LL, 2019 WL 3082160, at *3 (S.D. Cal. July 15, 2019) (reasoning that trademark infringement and UCL claims "may be analyzed 'jointly' because the test for [both] turns on whether there is a 'likelihood of confusion'" (internal citations omitted)). The likelihood of confusion inquiry, in turn, rests on the eight *Sleekcraft* factors, which are: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *Daimler AG*, 334 F. Supp. 3d at 1095 (citing *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1209 (9th Cir. 2012)). These *Sleekcraft* factors apply equally to claims for trade dress infringement as they do trademark infringement. *See Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1264–66 (9th Cir. 2001).

The above factors are to be "applied in a flexible fashion" such that they "function as a proxy or substitute for consumer confusion, not a rote checklist." *Rearden*, 683 F.3d at 1209 (citing *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1145 (9th Cir. 2011)). Consumer confusion is to be judged using an objective standard that considers "whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1140 (9th Cir. 2002) (quoting *Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998)).

Importantly, although courts have recognized the fact-intensive and "pliant" nature of the inquiry, *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999), the Ninth Circuit has repeatedly recognized that district courts are not precluded "from determining likelihood of confusion as a matter of law, either through dismissal or summary judgment." *See, e.g.*, *Murray v. Cable Nat'l Broad. Co.*, 86 F.3d 858, 860–61 (9th Cir. 1996) (citing *Newton v. Thomason*, 22 F.3d 1455, 1459 (9th Cir. 1994)). Thus, "in limited circumstances," courts may determine that there is no likelihood of confusion based solely on the pleadings. *See Universal Prot. Serv., LP v.*

*Coastal Fire & Integration Sys., Inc.*, No. 22-cv-1352-JES-KSC, 2023 WL 4042582, at *4 (S.D. Cal. June 15, 2023) (citing *Mastro's Restaurants LLC v. Dominick Grp. LLC*, No. CV 11-1996-PHX-PGR, 2012 WL 2091535, at *7 (D. Ariz. June 11, 2012)). Such circumstances arise when, among other situations, (1) the designs or marks are "obviously dissimilar," *Mintz v. Subaru of Am., Inc.*, 716 F. App'x 618, 620–21 (9th Cir. 2017) (unpublished opinion); (2) the designs or marks "are placed on products consumed different [sic] groups of purchasers or marketed through different market channels," *Plantronics*, 2019 WL 3082160, at *4 n.5 (internal citations omitted); and (3) the goods or services are unrelated, *Murray*, 86 F.3d at 861.

      Here, Plaintiff has not adequately pled a likelihood of confusion. In its Opposition, Plaintiff argues that the Complaint plausibly alleges facts supporting an inference of a likelihood of confusion because the Complaint asserts that Defendant used Plaintiff's trademark "in connection with the sale, offering for sale, distribution and/or advertising of their associated products, which use is likely to cause confusion, or to cause mistake, or to deceive consumers of the parties' similar and competitive products." Opp'n at 2 (quoting Compl. at 7). Plaintiff also argues that the Complaint plausibly alleges facts supporting an inference of a likelihood of confusion because the Complaint asserts that Defendant used Plaintiff's trade dress in commerce "in connection with the sale, offering for sale, distribution and/or advertising of their associated products, which use is likely to cause confusion, or to cause mistake, or to deceive consumers of the parties' similar and competitive products." *Id.* at 2–3 (quoting Compl. at 7–8).

      Such conclusory allegations are mere "recitation[s] of an element of trademark infringement," which do not support a plausible inference of a likelihood of confusion. *Yaros v. Kimberly Clark Corp.*, 2018 WL 1744675, at *3 (S.D. Cal. Apr. 11, 2018) (citing *McCall's Country Canning, Inc. v. Paula Deen Enters., LLC*, No. 09cv952-LAB(BLM), 2010 WL 11508996, at *2 (S.D. Cal. Feb. 8, 2010)). The Complaint provides several images of Plaintiff's socks and Defendant's allegedly infringing products and marketing materials, but even "side-by-side photographs . . . are not by themselves sufficient to

establish likelihood of confusion." *Nasser v. Julius Samann, Ltd.*, No. 17-cv-863-BTM-MDD, 2020 WL 10457001, at *2 (S.D. Cal. Aug. 28, 2020). Nor does the plain fact that Defendant advertised its product with the verbatim language of Plaintiff's word mark lead to a plausible claim. *See Yaros*, 2018 WL 1744675, at *3 (dismissing trademark infringement claim where the defendant used the phrase "BETTER TOGETHER" on its disposable wipes even when the plaintiff owned a registered mark for the same phrase and same product).

In contrast, Plaintiff must plausibly allege that confusion is "probable, not simply a possibility." *Murray*, 86 F.3d at 861 (quoting *Rodeo Collection, Ltd. v. W. Seventh*, 812 F.2d 1215, 1217 (9th Cir. 1987)). And Defendant makes a compelling case that, on the few facts alleged in the Complaint, confusion is not probable. The exhibits attached to the Complaint reveal that Plaintiff's socks sell for somewhere in the sub-$50 range on platforms like Amazon and QVC, whereas Defendant's socks sell for upwards of $500 and were debuted at Paris Fashion Week. *See* Compl., Ex. H, ECF No. 1-9. A price difference so drastic, coupled with non-competitive retail channels, can be reason enough to conclude as a matter of law that consumer confusion is unlikely. *See Brighton Collectibles, Inc. v. Dynasty Designs, LLC*, 2008 WL 11339960, at *4–8 (S.D. Cal. Sept. 10, 2008) (concluding as a matter of law that consumers were unlikely to be confused where there was a price difference of several hundred dollars and the parties utilized different marketing channels). Further, as other exhibits reveal, Defendant's socks display LVNA's rather prominent housemark, evincing Defendant's distinct sponsorship of the product. *See* Compl., Ex. F, ECF No. 1-8 at 3. The Ninth Circuit has upheld lower courts that have determined as a matter of law that consumer confusion was unlikely when the parties' products display their housemarks. *See Arcona, Inc. v. Farmacy Beauty, LLC*, 976 F.3d 1074, 1081 (9th Cir. 2020) ("In trademark infringement cases, the 'use of a housemark can reduce the likelihood of confusion.'" (quoting *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 351 (9th Cir. 1979))).

///

That said, contrary to Defendant's suggestion otherwise, Plaintiff need not discuss the *Sleekcraft* factors in detail in its pleadings. Defendant critiques the Complaint on the basis that "Plaintiff never mentions the majority of the *Sleekcraft* factors," Mem. at 5, but plaintiffs have no requirement under the Federal Rules of Civil Procedure to plead legal theories or authorities. *See Reed v. Elijah*, No. CV-17-1602-PHX-DGC (JFM), 2017 WL 5632688, at *2 (D. Ariz. Oct. 19, 2017) (citing Fed. R. Civ. P. 8(a)(2)). Indeed, "[f]ederal pleading rules . . . do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014). Defendant cites no authority backing up its remark that the Court should afford some sort of legal significance to the absence of the *Sleekcraft* factors in the Complaint, and the Court is doubtful that any such authority exists. *See Freeman Invs., L.P. v. Pac. Life Ins. Co.*, 704 F.3d 1110, 1115 (9th Cir. 2013) (eschewing the imposition of a "magic words" pleading requirement). Rather, a "claim has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (emphasis added).

The Complaint nonetheless fails to plead sufficient factual content to draw a likelihood of confusion inference in Plaintiff's favor. Plaintiff relies on a single case, *White v. LA Pilates Carlsbad*, to support its argument that the Complaint is sufficient, but that case is distinguishable. *See* Opp'n at 3. There, the plaintiff alleged not only that the defendants used his trademark in their advertising, marketing, and services, but he also alleged that the defendants *copied* his mark. *See White v. LA Pilates Carlsbad*, No. 20cv2054 DMS (MSB), 2021 WL 2896014, at *3 (S.D. Cal. July 9, 2021). That additional allegation of copying is significant because "[w]hen one party knowingly adopts a mark similar to another's, reviewing courts presume that the defendant will accomplish its purpose, and that the public will be deceived." *Acad. of Motion Picture Arts and Scis. v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1456 (9th Cir. 1991) (citing *Sleekcraft*, 599 F.2d at 354). No such allegation of copying can be found in Plaintiff's Complaint, so

no such presumption of confusion can be made here.

Because Plaintiff has not plausibly alleged a likelihood of confusion, it has failed to state a claim for trademark infringement, trade secret infringement, and unfair competition. Accordingly, Plaintiff's claims are **DISMISSED**.[1] The Court could stop here, but it will briefly consider Defendant's secondary argument that is more narrowly directed to Plaintiff's trade dress infringement claim.

## II. Trade Dress Infringement

With respect to Plaintiff's claim for trade dress infringement, Defendant argues the claim is deficient on two grounds. First, Defendant contends the Complaint fails to sufficiently articulate the protected trade dress that Plaintiff is asserting in this action. Mem. at 7–8. Second, even if the asserted trade dress is sufficiently articulated in the Complaint, Defendant contends the Complaint fails to plausibly allege any of the necessary elements of a trade dress infringement claim. *Id.* at 8–11. The Court need only reach Defendant's first argument.

Trade dress is "the total 'image of a product,' including features such as size, shape, color, texture, and graphics." *Millenium Lab'ys, Inc. v. Ameritox, Ltd.*, 817 F.3d 1123, 1126 (9th Cir. 2016) (quoting *Disc Golf Ass'n v. Champion Discs, Inc.*, 158 F.3d 1002, 1005 n.3 (9th Cir. 1998)). For a trade dress infringement claim, the plaintiff must prove that: "(1) the trade dress is inherently distinctive or has acquired distinctiveness through secondary meaning; (2) there is a likelihood that the public will be confused by the

---

[1] The Court notes that neither Party undertakes a comprehensive analysis of the issue under the *Sleekcraft* factors, but to do so likely requires independent assessments of the asserted trademark and asserted trade dress, even if the assessments largely overlap. The "similarity of the marks has always been considered a critical question in the likelihood-of-confusion analysis," and "the marks must be considered in their entirety and as they appear in the marketplace." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205–06 (9th Cir. 2000) (citing *Filipino Yellow Pages, Inc. v. Asian J. Publ'ns, Inc.*, 198 F.3d 1143, 1147–50 (9th Cir. 1999)). Such a determination is inherently different for a word mark, like "Pocket Socks," as compared to a trade dress, like Plaintiff's visual design of its socks. Though the analysis of many, if not most, of the other *Sleekcraft* factors may parallel each other for the word mark and trade dress (e.g., relatedness of the goods, defendant's intent, actual confusion), similarity of the marks may not. Thus, as will be discussed below, it is crucial that Plaintiff, if it wishes to amend its pleading, carefully articulate what its protected trade dress consists of.

infringing use; and (3) the trade dress is nonfunctional." *Stephen W. Boney, Inc. v. Boney Servs., Inc.*, 127 F.3d 821, 828 (9th Cir. 1997) (citation omitted).

"Because trade dress claims involve intensely factual issues," plaintiffs must allege in their complaint "a complete recitation of the concrete elements of their alleged trade dress." *YZ Prods., Inc. v. Redbubble, Inc.*, 545 F. Supp. 3d 756, 767 (N.D. Cal. 2021) (quoting *Arcsoft, Inc. v. Cyberlink Corp.*, 153 F. Supp. 3d 1057, 1070 (N.D. Cal. 2015)). This requirement serves the important purpose of putting the defendant on notice of what the asserted trade dress consists of. *See Sleep Sci. Partners v. Lieberman*, 2010 WL 1881770, at *3 (N.D. Cal. May 10, 2010) ("A plaintiff should clearly articulate its claimed trade dress to give a defendant sufficient notice."). As courts have recognized, to allow anything less invites the specter of a plaintiff "adopt[ing] a shifting-sands approach to pleading" that threatens the defendant's ability to understand the claims brought against it. *See Lepton Labs, LLC v. Walker*, 55 F. Supp. 3d 1230, 1240 (C.D. Cal. 2014).

Here, the Complaint omits any mention of what set of elements constitutes Plaintiff's protected trade dress. Plaintiff merely alleges that Defendant "is liable for infringement of Pocket Socks' trade dress in and to its POCKET SOCKS products," an allegation that falls short of putting Defendant on notice of what it is allegedly infringing. *See YZ Prods.*, 545 F. Supp. 3d at 767 (finding similarly conclusory allegations inadequate). Plaintiff counters that "the Complaint includes and references numerous images of Pocket Socks' product designs," but the Ninth Circuit just recently reiterated that "images and descriptions of some products are alone insufficient to put the defendant on notice of the asserted trade dress; rather a complete recitation of the concrete elements of the trade dress is required." *Tangle, Inc. v. Aritzia, Inc.*, 125 F.4th 991, 999 (9th Cir. 2025) (cleaned up) (quoting *YZ Prods.*, 545 F. Supp. 3d at 767).

Plaintiff's reliance on *Millenium Laboratories, Inc. v. Ameritox, Ltd.*, No. 12CV1063-MMA (JMA), 2012 WL 4863781, at *4 (S.D. Cal. Oct. 12, 2012), does not support its position. Opp'n at 3. True, in that case, the court concluded that the plaintiff "is not required to attach an image of the trade dress to sufficiently state a claim for trade

dress infringement." *Millenium Lab'ys*, 2012 WL 4863781, at *3. But just because an image of the trade dress is not necessary does not make it sufficient. Indeed, the court went on to recite a specific set of elements that the plaintiff had alleged in its complaint to constitute the protected trade dress. *Id.* Thus, the court reasoned that even though "an image of the trade dress and of the infringing reports would greatly assist in clarifying [the plaintiff's] position," said images were not required to put the defendant on notice of the claim so long as the complaint contained a complete list of what elements comprise the trade dress. *Id.* There is no tension between *Millenium Laboratories* and Defendant's argument that the images in Plaintiff's Complaint are not enough. *See Tangle*, 125 F.4th at 999 ("Tangle, however, failed to provide a complete recitation of the concrete elements that it contended constituted its protectible trade dress, and merely providing photographs of some products and partial descriptions is insufficient.").

Accordingly, Plaintiff's failure to adequately articulate its asserted trade dress provides an independent basis for dismissing Plaintiff's claim for trade dress infringement. Further, at this point it is premature to reach Defendant's alternative arguments relating to non-functionality and distinctiveness because the precise contours of Plaintiff's trade dress have not been refined. As other courts have recognized, "[t]rade dress is the composite tapestry of visual effects[,] . . . [b]ut in order to evaluate a plaintiff's trade-dress tapestry, one must first apprise herself of the elements comprising the trade dress." *Lepton Labs*, 55 F. Supp. 3d at 1240 (quoting *Clicks Billiards*, 251 F.3d at 1259).

## CONCLUSION

In light of the foregoing, the Court **GRANTS** Defendant's Motion to Dismiss (ECF No. 6). Plaintiff's Complaint is **DISMISSED WITHOUT PREJUDICE**, but because the Court cannot definitively conclude doing so would be futile, the Court will provide Plaintiff the opportunity to amend. *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc).

Within twenty-one (21) days of this Order, Plaintiff either **(1) SHALL FILE** an amended complaint, or **(2) SHALL INDICATE** to the Court that it will not do so. ***Failure***

*to timely select either of the above options may result in the dismissal of all claims for failure to comply with a court order pursuant to Federal Rule of Civil Procedure 41(b)*. *See Applied Underwriters, Inc. v. Lichtenegger*, 913 F.3d 884, 890–91 (9th Cir. 2019) (explaining courts may dismiss an action under Rule 41(b) when a plaintiff fails to comply with a court order requiring the filing of an amended complaint). Any amended complaint must be complete in and of itself without reference to Plaintiff's original Complaint; claims not realleged in the amended complaint will be considered waived. *See* S.D. Cal. CivLR 15.1; *Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (noting claims dismissed with leave to amend that are not realleged in an amended pleading may be "considered waived").

**IT IS SO ORDERED.**

Dated: April 29, 2025

Hon. Janis L. Sammartino
United States District Judge